IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

D. R. HORTON, INC.,

                    Plaintiff,

    vs.                                                     CIVIL NO.  07-709 MV/LFG

CURB NORTH, INC., and
CITY OF RIO RANCHO,

                    Defendants.
=============================

CURB NORTH, INC.,

                    Counter Claimant,

   vs.

D. R. HORTON, INC.,

                    Counter-Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING HORTON'S MOTION FOR SANCTIONS[1]

THIS MATTER is before the Court on "Plaintiff 's Motion For Sanctions  [Doc. 75] Based on [Defendant] Curb North, Inc.'s Motion to Add Claim of Negligent Misrepresentation and Promissory Estoppel Based on Negotiations in an Arms-Length Transaction and to Add Landry & Ludewig, LLP and Margaret C. Ludewig as Party Cross-Defendants [Doc. 53]."  Plaintiff D.R. Horton, Inc. ("Horton") requests that the Court impose Fed. R. Civ. P. 11 sanctions against Curb North, Inc.  The Court considered the motion, the response in opposition, and reply [Docs. 75, 78, 82].   For the reasons stated herein, the Court DENIES the motion.

---

[1]This matter is before the undersigned Chief Magistrate Judge pursuant to the Court's Order of Designation [Doc. 100].  It is being processed pursuant to 28 U.S.C. § 636(b)(1)(A).  The Court, believing that the "safe harbor" provisions of Fed. R. Civ. P. 11 had not been met, entered an order [Doc. 101] denying sanctions.  That order was withdrawn [Doc. 112] because D.R. Horton had, indeed, complied with the procedural provisions of Rule 11.

**Factual and Procedural Background**

The dispute between Horton and Defendant Curb North, Inc. ("Curb North") arose over a conflict about "impact fees" pertaining to the development of the residential subdivision Cabezon Communities ("Cabezon").  In 2003, Curb North and the City of Rio Rancho ("the City"), which is also a party to this lawsuit, entered into an agreement ("Development Agreement") in which Curb North would develop Cabezon.  The Development Agreement established, among other things, that Curb North would collect impact fees from third parties who purchased land from Curb North in Cabezon.  The impact fees would be deposited in an escrow account at the closing of each sale Curb North completed.

At the time of the Development Agreement (2003), the impact fees were $5,290 per single family home.  In November 2005, the City issued a new impact fee schedule that increased the impact fees to $7,699, effective May 1, 2006, and $8,890, effective January 1, 2007.

Over a period of four months, Curb North sold Horton three tracts of land in Cabezon.  For each transaction, Curb North entered into a different sales and purchase agreement.

**Purchase Agreement for Tract 10A-1**

The conflict at issue concerns this purchase agreement between Horton and Curb North.  The agreement was signed by Curb North in August 2005, and by Horton in September 2005.  Both signings occurred before either party knew of the City's plans to increase impact fees.  Prior to finalizing this agreement, however, Curb North met with Horton to discuss the City's proposed increases.  At this meeting, Curb North asserts that Horton was asked to deposit, upon closing, its impact fees for Tract 10A-1 based on the increased fee price.  Horton agreed to pay $5,290 per home at closing, with the remainder of the adjusted amount due a week prior to pulling any building permits.  Accordingly, the escrow agreement entered into by Horton and Curb North for tract 10A-1

2

calculates the impact fee deposit due at closing as $5,290 per home, with additional payment of $1,799 per lot from May 1, 2006 through December 31, 2006. The remaining amount then increased to $2,790 for each permit pulled after January 1, 2007. In addition, Horton agreed to pay a further undetermined sum for all permits obtained after February 1, 2009. (Tract 10A-1 Impact Fee Escrow Agreement, Exhibit C, ¶ 4.)

Horton acknowledges that the escrow agreement recognizes that the City had announced the increase of impact fees, but argues that the Development Agreement exempted properties in Cabezon from impact fee increases.

Between November 16, 2006 and August 2, 2007, the City issued Horton approximately 167 building permits for properties in Cabezon. Approximately 60% of these homes are completed and occupied.

## The Dispute

Sometime in early 2007, Curb North informed Horton that Horton would have to pay the impact fees at the amended price each time they received a building permit. This meant that Horton then had to pay an amount higher than the $5,290 that was in effect when Curb North and the City entered into the Development Agreement.

Curb North and the City assert that the Development Agreement was not an agreement on the continued price of impact fees, but, instead, an agreement to (1) memorialize the system of improvements Curb North would construct for the City; (2) establish a process for Curb North's collection of impact fees from third parties; and (3) establish how impact fees would be calculated.

Accordingly, Curb North requested that Horton deposit additional monies to be placed in the escrow account for the increased impact fees. Horton refused to do so on the grounds that (1) it was a third party beneficiary to the Development Agreement; (2) the impact fee was set at $5,290 in the

Development Agreement; and (3) this amount could not be changed by the City for at least four years from the date of the Development Agreement.

Furthermore, Curb North and Horton disagree on the meaning of an e-mail in which Horton appears to articulate that it will pay an increased amount in impact fees for Tract 10A-1.  In the e-mail, Horton states to Curb North, "[y]ou are going to change the figure Horton must deposit at closing from $7,699 to $5,920 and add the new language indicating that Horton will have to pay the remainder at least a week before it wants to pull building permits."  (*See* ¶ 112 of Ex. A attached to Doc. 53, and Ex. E to Ex. A of Doc. 53.)

Based on this e-mail, Curb North asserts that it relied upon Horton's attorney's communications that Horton agreed to pay an increased amount of impact fees depending on the date the building permits were pulled.  In response, Horton contends that the e-mail simply indicates to Curb North the need to draft an amended version of the escrow agreement, but that they did not accept the new terms of that agreement.  Thus, Horton argues that the e-mail should not be construed as an acceptance of the amended terms because the e-mail lacks consideration and corporate approval.  In other words, the e-mail only conveys Horton's understanding that Curb North will amend the contract, rather than Horton's acceptance of those amendments.  In contrast, Curb North states that the e-mail indicates that the two parties reached a "meeting of the minds," wherein Horton would pay increased impact fees for building permits in Cabezon Tract 10A-1.

Based on Curb North's reliance on the e-mail communication, Curb North asserts counterclaims of promissory estoppel and "negligent misrepresentation" against Horton.  Curb North's counterclaims give rise to Horton's request for Rule 11 sanctions.

<u>**Horton's Motion for Sanctions under Rule 11**</u>

Horton moves for sanctions against Curb North based on the contention that Curb North's proposed counterclaims violate Rule 11.  Horton also seeks an award of attorney fees.

Rule 11 states in pertinent part:

> (b) **Representation to the Court**.  By presenting to the court . . . a . . . written motion . . . an attorney is certifying to the best of the person's knowledge . . . (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]
>
> (c)  **Sanctions**.  If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may . . . impose an appropriate sanction against the attorneys [or] law firms that have violated subdivision (b)[.]

Fed. R. Civ. P. 11(b), (c).

In support of its motion for sanctions, Horton relies on parts (1) and (2) of Rule 11(b).  First, Horton argues that since New Mexico does not recognize "negligent misrepresentation" between legal counsel, Curb North's claims against Horton's attorneys amount to harassment, delay and undue expense.  Second, Horton asserts that the claims are not warranted by existing law and constitute frivolous claims.  Because Curb North's first claim is dependent upon the validity of its second counterclaim, the Court analyzes the two counterclaims together.

<u>**Analysis**</u>

**I.**    <u>**Negligent Misrepresentation**</u>

Curb North argues that since they relied on Horton's representation, a fact finder could determine that Horton's attorney's omission that the contract had not been accepted in their e-

mail amounts to a negligent misrepresentation.  Horton, on the other hand, responds that even if Curb North relied upon the e-mail, there is no cause of action available to Curb North.

Horton's position is primarily based on <u>Garcia v. Rodey</u>, 106 N.M. 757, 750 P.2d 118 (1988).  In <u>Garcia</u>, the state district court dismissed plaintiff's claims for negligence holding that the claims failed to state a cause of action against the defendant attorneys and their law firm. Garcia appealed the state court's dismissal, and the New Mexico Supreme Court affirmed.  <u>Id.</u>

<u>Garcia v. Rodey</u> concerned Rodey's conduct in a related § 1983 civil rights lawsuit that proceeded to a jury trial in federal district court.  There, Garcia sued the Socorro Board of Education ("School Board") for alleged civil rights violations.  Defendants in <u>Garcia v. Rodey</u> were the attorneys for the School Board in the federal lawsuit.  <u>Garcia v. Board of Education of the Socorro Consol. School Dist.</u>, 777 F.2d 1403 (10th Cir. 1985), *cert. denied,* 479 U.S. 814 (1986).

Before giving jury instructions in <u>Garcia v. Board of Education</u>, the federal trial judge warned the plaintiff that claims brought against the School Board members both in their official and individual capacities would be confusing to the jury.  *See* <u>Garcia v. Rodey</u>, 106 N.M. at 758. The trial judge advised the plaintiff to choose one claim or the other.  The judge further explained that if the plaintiff sued the School Board in its official capacity only, the jury instructions would be easier to understand and thus, benefit the plaintiff.  *See id.*  The School Board, however, could possibly raise a defense of sovereign immunity, but it represented that it would not raise the defense.  At trial, the plaintiff won a jury verdict against the School Board, as sued in its official capacity.

Defendant School Board appealed the jury verdict to the Tenth Circuit, and raised the immunity defense notwithstanding defense counsel's representation at trial that it would not

6

assert this defense.  The Circuit Court determined that the School Board's immunity barred the

lawsuit, reversed the trial verdict in plaintiff's favor and dismissed the action.  <u>Garcia v. Board

of Education</u>, 777 F. 2d 1403.

       After the plaintiff's verdict was overturned on appeal in federal court, Garcia sued

defense attorneys and their law firm in state court.  The plaintiff argued that defense counsel

negligently misrepresented the School Board's position in the federal lawsuit, and, as a result,

the plaintiff was damaged.  In affirming the state trial court's dismissal, the New Mexico

Supreme Court held that New Mexico does not recognize the tort of "negligent

misrepresentation" between counsel.  <u>Garcia v. Rodey</u>, 106 N.M. at 762.

       Here, Horton asserts that <u>Garcia v. Rodey</u> established that New Mexico law does not

recognize a claim of "negligent misrepresentation" between legal counsel.  Accordingly, Rule 11

sanctions are justified because Curb North's proposed counterclaims against Horton are not

"warranted by existing law."  Fed. R. Civ. P. 11(b).  Rule 11, however, requires the moving party

to prove more than the fact that its adversary's claim is not warranted in existing law.

## II.   <u>Rule 11 Sanctions</u>

       Other circuits have refused to impose sanctions based only on the assertion that a party's

claim is not supported by current law.  In <u>Brunt v. Service Employees Intern Union</u>, 284 F.3d

715 (7th Cir. 2002), the appellant ("Union") asked the court to impose sanctions on the appellee

("Brunt") because Union claimed that Brunt asserted a frivolous claim which was barred by case

law.  The court recognized that "Rule 11 imposes a duty on attorneys to ensure that any papers

filed with the court are well-grounded in fact, *legally tenable*, and not interposed for any

improper purposes."  <u>Id.</u> at 721 (italics added).  The court held, however, "Although Appellant's

claims were barred by existing . . . law, it does not follow that sanctions must be imposed."  <u>Id.</u>

The court primarily reasoned that since Brunt attempted to distinguish its case from existing precedent, Brunt's claims were not so frivolous as to warrant sanctions.  Id.

In similar fashion, the Fourth Circuit in In re Sargent, 136 F.3d 349 (4th Cir.), *cert. denied*, 525 U.S. 854 (1998), reversed the district court's imposition of sanctions as an abuse of discretion.  The court stated that a standard of "objective reasonableness" should be used when considering sanctions, i.e., that "a reasonable attorney in like circumstances could not have believed his actions to be legally justified."  Id. at 352.  The court stated further, "[p]ut differently, a legal position violates Rule 11 if it has absolutely no chance of success under existing precedent."  Id.  There, the court found that the appellant's claim was not so frivolous as to "have absolutely no chance of success" under the existing law.

In Hernandez v. Joliet Police Dept., 197 F.3d 256, 265-66 (7th Cir. 1999), the court upheld sanctions.  Hernandez sued numerous defendants, including the state attorney's office, notwithstanding the fact that the Eleventh Amendment entitled the state attorney's office to immunity for suit.  The court found that the plaintiff's lack of research amounted to the level of irresponsibility warranting Rule 11 sanctions.  Id.

The instant case is analogous to Brunt, and thus meets the "objective reasonableness" standard set forth in Sargent.  This is true, in part, because Curb North attempted to distinguish its claim from the facts and holding in Garcia v. Rodey.  Curb North asserted that Garcia only established that a claim of "negligent misrepresentation" is barred in litigious contexts.  The Court need not now determine in what contexts "negligent misrepresentation" is applicable, if any.  Prior to asserting the counterclaims, Curb North researched the issue and believes that it distinguished this case from Garcia.  Since Curb North's claim is an attempt to extend or modify existing law, it is not barred under Rule 11 and meets the standard articulated in Sargent.  In

other words, it cannot be said that Curb North's proposed claim had absolutely no chance of success under existing precedent.  *See* <u>Sargent</u> 136 F.3d at 352.

Additionally, Curb North's claim is distinguishable from <u>Hernandez</u>.  The court, in <u>Hernandez</u>, noted that the appellee overlooked an obvious point of law.  <u>Hernandez</u>, 197 F.3d at 265.  Here, Curb North's attempt to distinguish <u>Garcia</u> does not indicate a total lack of research, or that it overlooked an obvious point of law.

The Court further observes that motions for sanctions under Rule 11 are not favored, and for that reason, strict procedural requirements must be met before the Court can impose sanctions.  Here, while Horton complied with the Rule's procedural requirements, the Court remains unconvinced that Curb North's conduct is sanctionable as a matter of law.

IT IS THEREFORE ORDERED that Horton's Motion for Sanctions [Doc. 75] is DENIED.

*Lorenzo F. Garcia*
_____
Lorenzo F. Garcia
Chief United States Magistrate Judge